UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| MARCELLA L. DEROIN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, Commissioner of )<br>Social Security, )<br>)<br>Defendant. | Case No. 4:12-cv-4022-SLD |

ORDER

Plaintiff Marcella Deroin filed a claim for Supplemental Social Income and Disability Insurance Benefits on August 29, 2008. The Social Security Administration denied Deroin's application and the denial was upheld by the reviewing Administrative Law Judge ("ALJ"). Deroin argues that the ALJ did not sufficiently address the extent of her difficulties with concentration, persistence and pace, or the severity of her plantar fasciitis in determining Deroin's Residual Functional Capacity ("RFC").

This matter is now before the Court on Deroin's Motion for Summary Judgment, ECF No. 10, and the Commissioner's Motion for Summary Affirmance, ECF No. 13. The Court DENIES Deroin's Motion for Summary Judgment seeking reversal of the ALJ's decision and GRANTS the Commissioner's Motion for Summary Affirmance.

**BACKGROUND**

Deroin allegedly suffers from agoraphobia, bipolar mood disorder, anxiety, lumbar spine stenosis, chronic obstructive pulmonary disease ("COPD") and tendinitis. The ALJ determined that Deroin's agoraphobia, bipolar mood disorder, lumbar spine stenosis, and COPD constituted severe impairments. The ALJ also found that Deroin had the capacity to perform light work.

1

Though she would be unable to perform the requirements of her past relevant work, the ALJ, relying on the Vocational Expert ("VE") who testified that an individual with Deroin's limitations could successfully adjust to a significant amount of employment in the national economy, denied Deroin's application. This appeal followed. Deroin's arguments and all relevant medical evidence will be discussed below as needed.

## DISCUSSION

I. LEGAL FRAMEWORK

    A.    **District Court Review of the ALJ Decision**

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court's role is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Cannon v. Apfel*, 213 F.3d 970, 975 (7th Cir. 2000). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Rather, the ALJ's decision must "sufficiently articulate [their] assessment of the evidence to assure us that [they] considered the important evidence and ... to enable us to trace the path of [their] reasoning." *Id.* at 595 (quoting *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999)). Further, the ALJ's decision must build an accurate and logical bridge between the

evidence and the ultimate conclusions. *Id.* "Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (citing *Kararsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003)).

### B.    Entitlement to Benefits

In order to be entitled to Supplemental Security Income ("SSI") and/or Disability Insurance Benefits ("DIB"), a plaintiff must show that her inability to work is medical in nature and that she is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1566, 416.966 (1986). The establishment of disability under the Social Security Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382(c)(a)(3)(A).

Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 615 F.2d 142, 143 (7th Cir. 1980). This factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step test requires the ALJ to evaluate whether the plaintiff:

1) Does not currently perform or, during the relevant time period, did perform any substantial gainful activity;

2) Suffers from an impairment that is severe or whether a combination of his impairments is severe;

3) Suffers from an impairment which matches or is substantially equivalent to an impairment in the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1);

4) Is unable to perform his former occupation; and

5) Is unable to perform any other work within the national economy.

An affirmative answer at steps 1, 2 or 4 leads to the next step of the test. An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. Conversely, a negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at step 3 will require the ALJ to make a finding about the plaintiff's Residual Function Capacity ("RFC") based on all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The RFC is then used at steps 4 and 5 to determine whether the plaintiff can perform past relevant work or can adjust to other work, respectively. *Id.*

The plaintiff has the burden of production and persuasion at steps 1 through 4. But once the plaintiff shows an inability to perform past work (step 4), the burden shifts to the Commissioner to show that the plaintiff is able to engage in some other type of substantial gainful employment (step 5). *Tom v. Heckler*, 779 F.2d 1250, 1252-53 (7th Cir. 1985).

## II. ANALYSIS

### A. Treating Physician Opinion

Deroin's treating physician is Dr. Ritterhoff. Following a mental RFC assessment, Dr. Ritterhoff opined that Deroin did not have the mental abilities to meet competitive standards for skilled work. R. 481. Regarding social functioning, Dr. Ritterhoff found that Deroin had serious limitations due to her agoraphobia but was not precluded from performing work that involved social functioning. R. 481. Deroin argues that the ALJ's RFC determination is contrary to Dr. Ritterhoff's opinion regarding the severity of her condition. Deroin further maintains that Dr.

Ritterhoff's opinion should be given controlling weight because the Commissioner cannot point to any evidence contradicting Dr. Ritterhoff's opinion. *See Ketelboeter v. Astrue,* 550 F.3d 620, 625 (7th Cir. 2008) (treating physician's opinion entitled to controlling weight if well supported by medical findings and not inconsistent with other substantial evidence in the record); *Clifford v. Apfel* 227 F.3d 863, 870 (7th Cir. 2000). The Commissioner responds that Dr. Ritterhoff's opinion was afforded appropriate weight in Deroin's RFC determination because it is inconsistent with the record. *Id.*

Dr. Ritterhoff's opinion that Deroin is unable to meet competitive standards for skilled work is inconsistent with his own treatment notes as well as the objective record. R. 479-81; R. 355; R. 177-87. For example, Dr. Ritterhoff's opinion, found in his March 22, 2010 report, states that Deroin was seriously limited but not precluded in her ability to adhere to basic standards of neatness and cleanliness. R. 481. This opinion is contrary to his treatment notes from September 16, July 14, and January 19, 2009, where he refers to Deroin as well or immaculately groomed. R. 477; R. 355; R. 328. The ALJ also explained that she was discounting Dr. Ritterhoff's opinion because he consistently noted that Deroin's presentation during consultations was inconsistent with her reported symptoms. *See* R. 24. Additionally, in his March 22, 2010 report, Dr. Ritterhoff referred to Deroin's ability to use public transportation as seriously limited, but not precluded. R. 481. But because Deroin self-reported that she goes outside "once every three days" and when she does travel, she rides in a car or uses public transportation, the ALJ could reasonably conclude that Dr. Ritterhoff's opinion was contrary to Derion's own testimony. R. 180. The ALJ explained that Dr. Ritterhoff's opinions were given little weight when his conclusions were inconsistent with his treatment notes or the objective record. The Court finds that the ALJ was permitted to limit the weight given to Dr. Ritterhoff's

5

opinion in light of the inconsistencies noted. *See Knight v. Charter* 55 F.3d 309, 314 (7th Cir. 1995).

**B. Plantar Fasciitis**

   **1. Step Two Analysis**

A severe impairment is an impairment or combination of impairments that "significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step 2, the ALJ found that Deroin's plantar fasciitis did not constitute a severe impairment. But the ALJ determined that Deroin's chronic obstructive pulmonary disease (COPD), bipolar mood disorder, agoraphobia, and lumbar spine stenosis constituted severe impairments. R. 15. After determining that Deroin suffered from several severe impairments, the ALJ proceeded to step 3 of the analysis.[1]

Deroin argues that the ALJ erred by not concluding that her plantar fasciitis was a severe impairment. Whether the ALJ did or did not include all severe impairments in her step 2 determination is irrelevant as a matter of law. *See Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) (citing *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010)) (stating that once Plaintiff meets the step 2 threshold, the ALJ continues to step 3). Although the severity of Deroin's plantar fasciitis was irrelevant in the ALJ's step 2 determination because other impairments were determined to be severe, Deroin's plantar fasciitis is still relevant to the extent it affects—or should have affected—the ALJ's RFC determination. *See Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("When determining a Deroin's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment.").

---

[1] At step 3, the ALJ determined that Deroin did not have an impairment or combination of impairments that met or medically equaled one of the Listings of Impairments. R16.

**2. Impact on RFC Determination**

The ALJ determined that Deroin had the RFC to "perform light work as defined in 20 CFR 404.1567(b) but is limited to work involving no concentrated exposure to fumes, odors, dust, gases or other environmental irritants." R. 18. When determining Deroin's RFC, the ALJ was required to consider all relevant evidence in the record, not just severe impairments, and was not permitted to ignore contrary evidence. *See Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) ("Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, [s]he may not ignore entire lines of contrary evidence."). The ALJ states in her determination that "[t]here is no evidence the claimant's plantar fasciitis has any [e]ffect on her ability to engage in basic work activity…." R. 16.

As the ALJ did not account for Deroin's plantar fasciitis in her RFC determination, the issue is whether substantial evidence supports the ALJ's conclusion that Deroin's plantar fasciitis did not affect her RFC. To resolve this issue, a review of the record is necessary. The record contains only minimal and sporadic references to Deroin's plantar fasciitis and no conjecture about the impact Deroin's plantar fasciitis might have on her ability to work. *See* R. at 408; R. at 472. Two such references come from examining medical professionals who opined that Deroin suffered from plantar fasciitis. While acknowledging the condition, both medical professionals recommended conservative treatment measures and did not indicate that Deroin was limited in any fashion by this diagnosis. *Id.* The only reference indicating that Deroin's plantar fasciitis limited her ability to work was a comment made by Deroin herself during a consultation with Dr. Ritterhoff on October 13, 2008. During the consultation, Deroin conveyed that her plantar fasciitis and heel spurs made it somewhat difficult for her to walk. R. at 329. But Deroin's

7

contention during that consultation is contrary to the findings made on November 8, 2008, during a consultative examination by the Bureau of Disability Determination Services. During this examination, Deroin was able to walk unassisted with a non-antalgic gate for a distance greater than fifty feet. Though the doctor examined and commented on Deroin's plantar fasciitis, he ultimately did not conclude that it constituted a medical problem. R. 292-94.

A review of the record supports the ALJ's finding that Deroin's plantar fasciitis should not be accounted for in the RFC determination. Though the evidence shows that Deroin suffered from plantar fasciitis, the only evidence suggesting that her plantar fasciitis limited her ability to work in any meaningful manner is Deroin's own statement during an examination. But even that is contradicted by other evidence in the record. The ALJ's opinion was supported by substantial evidence; therefore, the ALJ was justified in concluding that Deroin's plantar fasciitis did not limit her ability to have meaningful employment. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971) (holding substantial evidence is relevant evidence as a reasonable mind might accept as adequate to support the decision).

### C. Concentration, Persistence, and Pace

The ALJ found that Deroin suffered from moderate limitations in maintaining concentration, persistence, and pace. R. 22. The ALJ states that this finding was based on a state agency mental evaluation and the objective record. *Id.* Deroin argues that the ALJ's RFC determination did not sufficiently account for her moderate limitations with concentration, persistence, and pace and as a result, her moderate limitations were not conveyed in the hypothetical questions posed to the VE. In the RFC determination, which was conveyed to the VE in a hypothetical question posed by the ALJ, Deroin was limited to work that involves "understanding, remembering and carrying out work instructions that can be learned within 30

8

days." R. 18; R. 68. This limitation, however, does not exclude any unskilled work. *See* 20 C.F.R. §404.1568(a), 416.968(a) (limiting unskilled work to simple duties that can be learned in 30 days). The crux of Deroin's argument is that her moderate limitations in concentration, persistence, and pace make her unfit for unskilled work; thus, the hypothetical questions posed to the VE did not sufficiently account for her limitations because the questions assumed her ability to perform unskilled work. Deroin concludes that the ALJ erred by relying on the VE's answers to those questions at step 5.

To support her argument that she is unfit for unskilled work, Deroin turns to the POMS manual.[2] To qualify for unskilled work under the POMS manual, a person must have the ability to: (1) "maintain attention for extended periods of 2-hour segments (concentration is not critical)" and (2) "complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods (these requirements are usually strict)." POMS DI 25020.010(B)(3). Deroin maintains that the ALJ's RFC determination and the record show she cannot meet either of the POMS requirements and is therefore unfit for unskilled work.

Before considering Deroin's argument regarding the POMS manual, it is worth noting that the Seventh Circuit has held that the POMS manual has no legal force. *See Parker for Lamon v. Sullivan*, 891 F.2d 185, 190 (7th Cir. 1989) ("The POMS manual has no legal force and therefore the standard cannot be controlling in this case."). Deroin cites an Eighth Circuit decision holding that the Commissioner must consider the POMS in his decision-making. *See Shontos v. Barnhart*, 328 F.3d 418, 424 (8th Cir. 2003). But even the Eighth Circuit holds that the POMS manual is not a controlling legal standard. *Id*. While *Shontos* is not binding

---

[2] The POMS manual is a handbook for internal use by employees of the Social Security Administration. *Schweiker v. Hansen,* 450 U.S. 785, 790 (1981).

9

authority, the factual context makes the Eighth Circuit's holding more persuasive.[3] As such, even though POMS has no legal force, the Court will consider whether substantial evidence shows that Deroin can perform unskilled work as defined by POMS.

Even if the POMS manual is considered, Deroin's argument still fails. The first factor—maintaining attention—is qualified by the fact that "concentration is not critical" to maintaining attention. POMS DI 25020.010(B)(3). Therefore, Deroin's concentration limitations do not necessarily prevent her from maintaining attention. Further, in the State agency evaluation referenced by the ALJ, the examining doctor stated Deroin "retains sufficient attention and concentration to persist at and complete such activities for extended periods of time." R. 324. The State agency evaluation therefore contradicts Deroin's argument that she is limited in her ability to maintain attention. Moreover, Dr. Ritterhoff's mental RFC found that though Derion is seriously limited in her ability to maintain attention for two hours, she has no condition that precludes her from doing so. R. 480. The record therefore supports the conclusion that despite any limitations related to concentration, Deroin can maintain attention for extended periods of 2-hour segments, meaning that she is able to perform unskilled work under the first POMS factor.

The ability to satisfy the second POMS factor—"performing at a consistent pace without an unreasonable number and length of rest periods"—is within Deroin's ability, despite her moderate limitations. POMS DI 25020.010(B)(3); R. 324. In the State agency evaluation referenced by the ALJ, the examining doctor stated Deroin is "able to perform at a regular, acceptable pace requiring only common frequency of lengths of rest breaks." R. 324. Thus, the record reflects that the ALJ could conclude that though Deroin may have moderate limitations

---

[3] Both this case and *Shontos* consider the POMS manual in the context of a social security disability appeal; conversely, *Sullivan*, the Seventh Circuit case, considers the POMS manual outside of the social security context.

with concentration, persistence, and pace, the severity of those limitations does not preclude her from performing unskilled work as defined by the POMS manual. *See id.*

Having found that the POMS manual does not help Deroin, the next question is whether the ALJ's hypothetical questions to the VE adequately accounted for Deroin's moderate limitations with concentration, persistence, and pace. The VE included a limitation for the "ability to understand, remember, and carry out work instructions learned in 30 days." R. 68. Thus, the Court will consider whether this limitation sufficiently accounted for Deroin's moderate difficulty with concentration, persistence, and pace.

The Commissioner argues that this case falls within the standard set forth by *Johansen v. Barnhart*, 314 F.3d 283 (7th Cir. 2002). *Johansen* provides an exception to the rule that the ALJ should expressly refer the VE to limitations with concentration, persistence, and pace: the ALJ can rely on a medical translation to relate limitations in concentration, persistence, and pace to the VE. Here, the Commissioner argues that the ALJ's hypothetical questions to the VE, which included limitations to "work that involves understanding, remembering, and carrying out work instructions that can be learned within 30 days" adequately accounted for Deroin's limitations because in using that language, the ALJ expressly relied on a medical translation of Derion's limitations with concentration, persistence, and pace.

The Court finds that the ALJ relied on a medical translation to appropriately convey Deroin's moderate limitations in concentration, persistence, and pace to the VE. In her decision, the ALJ specifically references a medical examination in regards to Deroin's moderate limitations in maintaining concentration, persistence, and pace. *See* R. 22 ("A State agency mental evaluation dated November 26, 2008 assessed [Deroin] with … moderate limitations in social functioning and maintaining concentration, persistence or pace with no episodes of

decompositions (Ex. 4F [Dr. Mehr's mental RFC opinion])."). Dr. Mehr's mental RFC evaluation translated Deroin's mental limitations into a work limitation. Specifically, Dr. Mehr found that Deroin retained the "capacity to understand and remember instructions for simple tasks of a routine and repetitive type" and "retain[ed] sufficient attention and concentration to persist at and complete such activities for extended periods of time." R. 324. By specifically referring to Dr. Mehr's opinion in regards to Derion's limitations with concentration, persistence and pace, and then using very similar—though not identical—language in assessing Derion's limitation, the Court can trace the logic of the ALJ. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (explaining that the ALJ must build a "logical bridge from the evidence to [her] conclusion" so a reviewing court can "trace the path of [her] logic" (internal citations omitted)). Here, the ALJ cited the evidence she relied upon to reach her final conclusion that Deroin is limited to performing work that involves understanding, remembering, and carrying out work instructions that can be learned within 30 days. The *Johansen* exception therefore applies because the ALJ relied on a specific doctor's mental RFC in in conveying Deroin's limitations with concentration, persistence, and pace to the VE. Accordingly, the ALJ did not err in relying on the VE's testimony.

## CONCLUSION

For the reasons described above, Deroin's Motion for Summary Judgment, ECF No. 10, is DENIED and the Commissioner's Motion for Summary Affirmance, ECF No. 13, is GRANTED.

Entered this 26th day of September 2013.

s/ Sara Darrow  
SARA DARROW  
UNITED STATES DISTRICT JUDGE